UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
MICHELLE GRIMMETT, on her own behalf        :
and on behalf of all others similarly situated,    :
                                                                             :
                                           Plaintiff,          :
                                                                             :
                       -against-                               :            24-CV-5903 (VEC)
                                                                             :
                                                                             :            OPINION & ORDER
DMM SOLUTIONS, INC., and DOES 1-         :
100, Whose Names Are Currently Unknown  :
                                                                             :
                                                                             :
                                           Defendants.    :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Defendant DMM Solutions, Inc. filed a motion to compel arbitration. Motion to Compel Arbitration, Dkt. 16. The Court issued an order permitting the parties "to take discovery targeted to the issues raised in [DMM's] motion." September 26, 2024, Order ("Order"), Dkt. 14, at 2. Plaintiff argues that the "targeted" discovery permitted by the Court's order should include discovery about her theory that her entire contract with DMM (including the arbitration agreement) is unenforceable because it was induced fraudulently. Plaintiff is incorrect. A motion to compel arbitration can be defeated by reason of fraudulent inducement only where the party resisting arbitration shows that the arbitration agreement specifically, as opposed to the contract generally, was the result of fraud; thus, the discovery contemplated by Plaintiff is not "targeted" within the meaning of the Court's order.

## BACKGROUND

DMM operates several dating websites, including one called "Dating.com," which Plaintiff Michelle Grimmett used. Complaint ("Compl."), Dkt. 1, ¶¶ 6–7. Dating.com utilizes a

"pay for engagement" business model, whereby users must purchase credits in order to send messages to other users, receive images, participate in video chats, and utilize other functions on the site. *Id.* ¶¶ 3, 37. So-called "Popular Members" of the site may send messages free of charge, but ordinary users must purchase credits to respond. *Id.* ¶ 33. According to Plaintiff, the Popular Members are "fake 'catfish' profiles" set up by DMM to extract money from unsuspecting users.[1] *Id.* ¶ 34. Plaintiff contends that because DMM's sites are based on a lie — *i.e.*, that the Popular Members with whom users interact are actual people looking for romantic relationships —DMM's entire enterprise is fraudulent. *Id.* ¶¶ 4, 42. She brings claims on behalf of herself and a putative class under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, and various state false advertising statutes, as well as a common law claim for unjust enrichment. *Id.* ¶¶ 44–84.

DMM, citing an arbitration agreement in its underlying contract with Plaintiff, moved to compel arbitration. *See* Motion to Compel Arbitration. Pursuant to a joint request by the parties, the Court issued an order permitting them "to take discovery targeted to the issues raised in [DMM's] motion." Order at 2. In light of that order, Plaintiff served discovery requests seeking, among other things, "[a]ll information Defendant has about Plaintiff," "[a]ll information about the fake catfishing profile" with which Plaintiff interacted, "[e]xemplars of the contracts with Popular Member catfishers and related policies," "[c]atfishing complaints/government investigations," and a deposition of DMM's CEO. Plaintiff's November 21, 2024, Letter ("Pltf. Letter"), Dkt. 27, at 4. DMM argues that the information Plaintiff is seeking exceeds the scope of "targeted" discovery permitted under the Court's order. Defendant DMM's November 26, 2024, Letter ("DMM Letter"), Dkt. 28, at 1.

---

[1] According to the Complaint, a "catfish" is "a person who sets up a false personal profile on a social networking site for fraudulent or deceptive purposes." Compl. ¶ 35.

2

The parties appeared before the Court via teleconference and, per the Court's request, submitted letters outlining their positions. *See* Pltf. Letter; DMM Letter. The parties do not seek the Court's input as to the propriety of any of Plaintiff's specific requests, but instead seek clarity as to whether the type of discovery Plaintiff has requested — that is, discovery about the purportedly fraudulent nature of DMM as a whole, as opposed to discovery related to the arbitration agreement specifically — is permissible under the terms of the Court's order.

## DISCUSSION

The Federal Arbitration Act ("FAA") provides that courts must enforce arbitration agreements "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. In interpreting this directive, courts have divided "challenges to a contract containing an arbitration clause . . . into two categories: those that challenge the contract as a whole, and those that challenge the arbitration clause in particular." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 61 (2d Cir. 2012). Where a party challenges "the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it." *Id.* (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)). But the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally" as a reason not to enforce an arbitration agreement. *Id.* (quoting *Buckeye Check Cashing*, 546 U.S. at 445); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). Put otherwise, a party cannot avoid arbitration "merely by stating that the arbitration clause is an element of the scheme to defraud" but rather must show "some substantial relationship between the fraud or misrepresentation and the arbitration clause in particular." *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 667 (2d Cir. 1997); *see also Aksman v. Greenwich Quantitative Rsch. LP*, 563 F. Supp. 3d 139, 154 (S.D.N.Y. 2021) ("[I]n *Prima Paint* and cases

3

thereafter, the Supreme Court has held repeatedly that unless the parties provide otherwise, challenges to the underlying contract containing the agreement to arbitrate—rather than to the agreement to arbitrate itself—are reserved for the arbitrator.").

Given this clear authority, the argument presented in Plaintiff's letter — that DMM is an "all-encompassing fraudulent enterprise" — carries no legal weight in a challenge to a motion to compel arbitration. Pltf. Letter at 2. Accordingly, discovery pertaining to that theory would not be "targeted to the issues raised in [DMM's] motion." Order at 2. Only evidence of fraud in the inducement of the arbitration clause *specifically* can conceivably be relevant to Plaintiff's response to DMM's motion to compel arbitration. *See* Fed. R. Civ. P. 26(b)(1) (discovery must be "relevant to any party's claim or defense").

Plaintiff attempts to rebut this conclusion by noting that courts allow parties challenging arbitration agreements to dispute "the very existence of the contract to be arbitrated." Pltf. Letter at 3 (quoting *In re Arb. Between Azores Int'l Shipping, Inc. & Panamanian Carriers Corp.*, No. 99 CIV. 850, 1999 WL 493380, at *2 (S.D.N.Y. July 9, 1999)). This is true but irrelevant. Courts may invoke the principle Plaintiff cites "only in those narrowly-limited circumstances where the very existence of a contract is in doubt"; it "does not apply with equal force to situations where the parties have engaged in . . . fraud." *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 68 (2d Cir. 2005). Here, Plaintiff challenges only the enforceability of the contract, not its existence.

The cases upon which Plaintiff relies only highlight the shortcomings of her position. In *Law Enforcement Systems, Inc. v. American Express Company*, the plaintiffs alleged that the defendants added an arbitration clause and class action waiver into their agreement with customers only after they discovered (but failed to disclose) information that increased their potential exposure to class action liability. No. 03-CV-3371, 2006 WL 2034435, at *2 (E.D.N.Y.

4

July 17, 2006). The court allowed limited discovery into the defendants' knowledge of their potential exposure because such evidence, if it existed, could show that the defendants purposefully omitted material information relevant to the arbitration clause and class action waiver when they presented them to customers. *Id.* at *2–*3. The court emphasized that discovery was appropriate only because the plaintiffs "appear[ed] to assert a specific claim of fraud going directly to the adoption of the arbitration clause." *Id.* at *3. Here, Plaintiff's claim lacks such precision: rather than show that her arbitration agreement with DMM *specifically* was the result of fraud, Plaintiff seeks to prove that "the entire DMM dating website business is a fraudulent enterprise such that any contractual provisions, including specifically the arbitration/class waiver provisions, are directed to facilitating and perpetuating that fraud." Pltf. Letter at 2. Such a theory, even if proven, would not allow Plaintiff to evade arbitration.

Plaintiff's reliance on *Flores v. National Football League*, No. 22-CV-0871, 2022 WL 3098388 (S.D.N.Y. Aug. 4, 2022), is even further afield. In that case, this Court noted that "discovery on a motion to compel arbitration is appropriate when the party opposing arbitration comes forth with reliable evidence that is more than a naked assertion that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Id.* at *2 (internal quotation marks omitted). Plaintiff argues that because she "has provided specifics, not just naked speculation, supporting her claim of fraudulent inducement and unconscionability," she is entitled to take discovery on those claims. Pltf. Letter at 3. Regardless of how specifically she has alleged them, Plaintiff's claims of fraudulent inducement and unconscionability are irrelevant at this stage because they relate to the contract as a whole, rather than to the arbitration agreement in particular. There is nothing in *Flores* — or any other case of which the Court is aware — to suggest that Plaintiff must be permitted to take discovery on a legally irrelevant theory simply because she has articulated it clearly.

5

## CONCLUSION

For the foregoing reasons, the Court rejects Plaintiff's argument that she must be permitted to take discovery about the theory that her contract with DMM is unenforceable because it was induced fraudulently. To the extent Plaintiff seeks discovery in connection with a claim of fraudulent inducement, such efforts must be reasonably calculated to uncover information likely to show that the arbitration clause specifically, as opposed to the contract generally, was the result of fraud.

**SO ORDERED.**

**Date: December 11, 2024**
      **New York, New York**

                                      **VALERIE CAPRONI**
                                      **United States District Judge**